IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CATHERINE HEAGY,** *et al.* <br> **Plaintiffs,** <br><br> v. <br><br> **BURLINGTON STORES, INC.,** *et al.* <br> **Defendants.** | **CIVIL ACTION NO. 20-2447** |

### MEMORANDUM OPINION

**Rufe, J.**                                                                 September 6, 2023

      This case arises out of a slip and fall incident that occurred in a Burlington Coat Factory in Springfield, Pennsylvania. Plaintiffs Catherine Heagy and her husband, Harry Heagy, filed suit against Burlington in the Philadelphia Court of Common Pleas, seeking damages for injuries Catherine Heagy sustained in the fall and for loss of consortium. Burlington removed the case to this Court based on diversity of citizenship and named janitorial subcontractor Kellermeyer Bergensons Services, LLC ("KBS") as a third-party defendant. KBS later named its subcontractor, Kim and Sanford Gray ("Gray Defendants"), as a third-party defendant, after which Plaintiffs filed an amended complaint against all Defendants. Multiple crossclaims have also been asserted among the Defendants.

      Burlington has moved for partial summary judgment only as to Plaintiffs' claims for punitive damages against it, and KBS and Gray Defendants (together "Subcontractor Defendants")[1] have each moved for summary judgment on all claims against them. For the reasons stated below, all motions will be denied.

---

[1] Although Subcontractor Defendants have asserted crossclaims against each other, their motions for summary judgment are nearly identical—they both seek dismissal of the claims against them based on Burlington's alleged misconduct. Thus, for purposes of this Memorandum Opinion, the Court will construe their motions together.

I.  **BACKGROUND**[2]

On August 1, 2019, at approximately 9:20 a.m., Burlington's regional loss prevention manager Jason Curnow slipped and nearly fell in the Springfield Burlington after stepping from a wet mat onto a tile floor in the vestibule area of the store. Curnow reported the incident to store manager Jeanine Norkaitis. Norkaitis testified at her deposition that she promptly informed the on-site cleaners, employed by Subcontractor Defendants, who had been cleaning the floors since earlier that morning. Norkaitis purportedly told the cleaners that the mat "need[ed] to get dried," at which point they used a "big machine that they use for the ceramic tiles, and . . . started going over [the mat]."[3] Norkaitis claimed that the cleaners "all spoke very heavy Spanish" and were "struggling with the dialogue."[4] Norkaitis left the area and submitted a work service ticket representing that the cleaners had completed their tasks. The store was open for business shortly thereafter.

At approximately 9:30 a.m., Catherine Heagy entered the store and slipped and fell on the same mat, which the parties agree was "soaking wet."[5] Catherine Heagy sustained serious injuries as a result of the fall and promptly contacted a lawyer.

On August 15, 2019, exactly two weeks after the fall, Plaintiffs' counsel sent Burlington a letter stating that he would be representing Catherine Heagy in connection with the incident ("the Representation Letter"). The Representation Letter also stated the following:

---

[2] Contrary to Judge Rufe's Policies and Procedures for Summary Judgment, the moving parties did not file a joint statement of undisputed material facts. *See* Order Sept. 29, 2022 [Doc. No. 98] (ordering parties to follow Judge Rufe's Policies and Procedures for Summary Judgment). However, in the interest of efficiency and judicial economy, and noting that the relevant facts are straightforward and largely undisputed, the Court draws the factual background from the statements of facts set forth in the parties' briefing, and from the documents of record.

[3] KBS' Mot. Summ. J. Ex. C ("Norkaitis Dep.") [Doc. No. 100-2] 61:10-13.

[4] Norkaitis Dep. [Doc. No. 100-2] 61:7-8.

[5] *See* Norkaitis Dep. [Doc. No. 100-2] 65:21-23.

> It is my understanding that there is a security/surveillance video of this incident. This is a request that the entire unedited video be preserved as recorded on the original equipment, for a 24-hour period before and a 24-hour period after the time of the incident. Please confirm that such security video exists and that you have preserved the same. Also please provide us with a complete copy of the video at your earliest convenience. We are also requesting that you provide us with a complete copy of any incident report prepared for this incident. If the video is destroyed, it will be considered spoliation of evidence.[6]

On August 21, 2019, Lavern Bernard, the investigating adjuster for Burlington's third-party administrator Gallagher Bassett, contacted Plaintiffs' counsel. Bernard stated that she could not provide Plaintiffs' counsel with the requested 48 hours of footage, but that this footage would be preserved. Two days earlier, Bernard had submitted a request to Burlington directing it to "burn video of the customer 30 minutes prior to the incident and at least 30 minutes of video of the customer after the incident."[7] Burlington's loss prevention associate subsequently preserved footage only "of the customer"—*i.e.*, only footage in which Plaintiff was present, which amounted to 3 minutes prior to her fall and 17 minutes after her fall.

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[9] A "genuine" dispute over material facts exists when "the evidence is such that a reasonable jury could return a verdict for the

---

[6] Pl's Resp. Opp. Burlington's Mot. Partial Summ. J. Ex. H [Doc. No. 103-11].

[7] Burlington's Mot. Partial Summ. J. Ex. F [Doc. No. 101-6].

[8] Fed. R. Civ. P. 56(a).

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

nonmoving party."[10] To evaluate a motion for summary judgment, the court must "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor."[11] Nonetheless, the non-moving party must support its opposition to the motion by pointing to evidence in the record.[12] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[13]

## III. DISCUSSION

### A. Burlington's Motion for Partial Summary Judgment

Burlington seeks to strike and dismiss Plaintiffs' claims for punitive damages. Punitive damages are reserved for "willful, wanton, or reckless conduct."[14] To prove a claim for punitive damages, a plaintiff must show that the defendant acted "with evil motive or reckless indifference to the rights of others."[15] To demonstrate reckless indifference, a plaintiff must show that a defendant "had a subjective appreciation of the risk of harm to which the plaintiff was exposed" and "acted, or failed to act, as the case may be, in conscious disregard of that risk."[16]

In this case, unlike many slip and fall actions, there are no disputed facts as to Burlington's notice. Burlington had actual notice not only of the hazardous condition, but also that the hazardous condition presented a fall risk. Burlington contends that it did not, however,

---

[10] *Id.*

[11] *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citation omitted).

[12] *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986).

[13] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[14] *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (citations omitted).

[15] *Brand Mktg. Grp. LLC v. Intertek Testing Serv's., N.A., Inc.*, 801 F.3d 347, 360 (3rd Cir. 2015) (quoting *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa. Super. Ct. 2005), *aff'd*, 922 A.2d 890 (Pa. 2007)).

[16] *Brand Mktg.*, 801 F.3d at 360 (internal quotation marks omitted) (quoting *Hutchison*, 870 A.2d at 772).

have a subjective appreciation of the risk of harm to which Catherine Heagy was exposed. Burlington bases its argument solely upon the deposition testimony of Norkaitis, arguing that Norkaitis "believed the issue was being corrected" because she purportedly witnessed the cleaners "going over" the mat with a "big machine that they use for the ceramic tiles."[17] However, Norkaitis conceded during her deposition that the use of these machines was "odd," that she did not understand "how [the cleaners were] correcting [the hazard]," that they all "spoke very heavy Spanish," and that they were "struggling with the dialogue."[18] Despite these concerns, Norkaitis "walked away" without any further inquiry, and made no efforts to follow up as to the status of the hazardous condition before the store opened for business.[19] Based on these circumstances, a reasonable factfinder could find that Norkaitis' actions or inactions constitute "willful, wanton, or reckless conduct" sufficient to warrant punitive damages against Burlington.[20]

It is also worth emphasizing that Burlington preserved only 20 minutes of surveillance footage, despite Plaintiffs' counsel's request that Burlington retain a total of 48 hours of footage before and after the incident. As discussed in detail below, the undisputed evidence of record demonstrates that Burlington spoliated this pertinent video evidence for the purpose of undermining the integrity of this litigation. Burlington cannot now benefit from its own misconduct. Given the questions that remain in this case, and due to the lack of critical evidence at the hands of Burlington, the motion for partial summary judgment will be denied.

---

[17] Burlington's Mot. Partial Summ. J. [Doc. No. 101] at 3, 12.

[18] Norkaitis Dep. [Doc. No. 100-2] 61:7-8, 14-17.

[19] *See* Norkaitis Dep. [Doc. No. 100-2] 61:17.

[20] *See Hutchison*, 870 A.2d at 770.

### B. Subcontractor Defendants' Motions for Summary Judgment

Subcontractor Defendants seek summary judgment on all claims against them, arguing that (1) Burlington's negligence was an intervening and/or superseding cause of Catherine Heagy's fall; and (2) Burlington spoliated relevant surveillance footage.[21]

### 1. Superseding Cause

In determining whether an intervening force is a superseding cause, "the test is whether the intervening conduct was so extraordinary as not to have been reasonably foreseeable."[22] Consequently, under Pennsylvania law, "[a] determination of whether an act is so extraordinary as to constitute a superseding cause is normally one to be made by the jury."[23] Subcontractor Defendants claim that even if their employees created the hazardous condition, Burlington's "knowledge of the hazardous condition coupled with the failure to remedy the condition before opening the store" is dispositive.[24] However, as discussed above, there are genuine issues of material fact concerning the reasonableness of Burlington's conduct after it received notice of the hazardous condition. Whether Burlington's alleged failure to correct the hazard was "so extraordinary as not to have been reasonably foreseeable" is a fact-sensitive inquiry reserved for the jury.[25] Because reasonable minds could differ as to whether Burlington's actions or inactions broke the causal chain, the Court will deny summary judgment on this issue.

---

[21] Only Burlington has responded to Subcontractor Defendants' motions.

[22] *Zurich Am. Ins. Co. v. A.T. Chadwick Co., Inc.*, No. 20-2180, 2022 WL 425890, at *3 (E.D. Pa. Feb. 11, 2022) (citing *Von der Heide v. Com., Dep't of Transp.*, 718 A.2d 286, 288 (Pa. 1998)).

[23] *Bole v. Erie Ins. Exch.*, 50 A.3d 1256, 1261 (Pa. 2012) (quoting *Powell v. Drumheller*, 653 A.2d 619, 624 (Pa. 1995)).

[24] KBS' Mot. Summ. J [Doc. No. 99] at ECF page 3; Gray Defs.' Mot. Summ. J. [Doc. No. 102] at ECF page 4.

[25] *See Powell*, 653 A.2d at 624 ("When facts are in dispute or room exists for a difference of opinion as to whether certain conduct is superseding or where facts are such that reasonable minds could differ as to whether the intervening act or cause constituted a superseding act or cause, the question is one for submission to the jury.").

### 2. Spoliation

In general, "[s]poliation is the destruction or significant alternation of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[26] "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and the duty to preserve the evidence was reasonably foreseeable to the party."[27] Further, "a finding of bad faith is pivotal to a spoliation determination.[28] A spoliating party may be subject to a variety of sanctions, including: "(1) dismissal of a claim or granting judgment in favor of a prejudiced party; (2) suppression of evidence; (3) an adverse inference, referred to as the spoliation inference; (4) fines; [and/or] (5) attorneys' fees and costs."[29]

#### a. Whether Burlington Spoliated Evidence

Burlington does not dispute that the video footage was in its control and that it was relevant to the claims and defenses in this action. Rather, it argues that there is no evidence showing it had "any desire to suppress the truth" or "fraudulent intent."[30] As this Court has recognized, slip-and-fall cases are "especially likely to lead to litigation," because they "so predictably lead to a lawsuit, [and] defendants can often be expected to anticipate litigation soon

---

[26] *Costobile-Fulginiti v. City of Philadelphia*, 719 F. Supp. 2d 251, 529 (E.D. Pa. 2010) (citing *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110 (E.D. Pa. 2005)).

[27] *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citation omitted) The party who seeks spoliation sanction bears the burden of proving these factors. *Marinkovic v. Battaglia*, 2019 WL 4600207, at *13 (W.D. Pa. Sept. 23, 2019) (citation omitted).

[28] *Bull*, 665 F.3d at 79.

[29] *Paramount*, 234 F.R.D. at 110-11 (citation omitted).

[30] Burlington's Mem. Opp. KBS' Mot. Summ. J. [Doc. No. 104] at 10; Burlington's Mem. Opp. Gray Defs.' Mot. Summ. J. [Doc. No. 105] at 13.

after the event itself."[31] The Court has also noted that "such an event combined with other circumstances may often be enough that defendants should reasonably anticipate litigation beginning soon after the incident itself."[32]

In this case, Plaintiffs' counsel sent the Representation Letter to Burlington just two weeks after the incident, when Burlington still possessed the surveillance footage at issue. The Representation Letter unequivocally requested "the entire unedited video . . . as recorded on the original equipment, for a 24-hour period before and a 24-hour period after the time of the incident," and specifically cautioned that "[i]f the video is destroyed, it will be considered spoliation of evidence."[33] Burlington does not dispute receiving the Representation Letter. It instead relies on the request from its third-party administrator, Gallagher Basset, which advised that Burlington "burn video of the customer 30 minutes prior to the incident and at least 30 minutes of video of the customer after the incident."[34] Burlington contends that the "key words" in this instruction were "of the customer" and that, as a result, its loss prevention associate preserved only footage "of Plaintiff," which captured her entry into the store, her fall, and 17 minutes of activity thereafter.[35]

Burlington's argument is one of semantics, not substance. Lavern Bernard, the Gallagher Basset adjuster who issued the request, confirmed at her deposition that she sought to preserve "an hourlong video, which would have been 30 minutes before the incident time and 30 minutes

---

[31] *Bistrian v. Levi*, 448 F. Supp. 3d 454, 469 (E.D. Pa. 2020) (citation omitted).

[32] *Id.*

[33] Pl's Resp. Opp. Burlington's Mot. Partial Summ. J. Ex. H [Doc. No. 103-11].

[34] *See* Burlington's Mot. Partial Summ. J. Ex. F [Doc. No. 101-6].

[35] *See* Burlington's Mem. Opp. KBS' Mot. Summ. J. [Doc. No. 104] at 5 (emphasis omitted); Burlington's Mem. Opp. Gray Defs.' Mot. Summ. J. [Doc. No. 105] at 7 (same).

after the incident time,"[36] and that Burlington's loss prevention employees "underst[ood] what [she] meant by this."[37] Jason Curnow, the Burlington employee who nearly fell on the same wet mat, concurred at his deposition that Gallagher Basset's "staple request" is "30 minutes before the incident and 30 minutes after the incident."[38] Bernard also testified to Burlington's training procedures regarding customer injuries, which Burlington outlines as follows:

> Review for any video footage that could have captured conditions in the area of the incident leading up to the injury, the incident as it occurred, and the aftermath of the incident. A good rule of thumb from the court system is to capture 30 minutes or more of video before and after the alleged incident.[39]

Indeed, the need for preservation of footage "in the area of the incident leading up to the injury" is particularly important in this case, given that Burlington's own employee slipped and nearly fell on the same mat just ten minutes before Catherine Heagy entered the store.

Even assuming *arguendo* that Burlington's narrow interpretation of the Gallagher Basset request was reasonable, Burlington effectively ignored the initial Representation Letter sent by Plaintiffs' counsel. The Representation Letter should have immediately prompted Burlington to preserve any potentially relevant evidence within the identified 48-hour period.[40] Tellingly, there is no indication that anyone from Burlington had even *watched* the requested footage before permanently deleting it. Nor does Burlington adequately explain why it failed to preserve, at the very least, additional footage of the events leading up to Catherine Heagy's fall. This evidence could have resolved several issues at the heart of this case, including how, when, and by whom

---

[36] Pl's Resp. Opp. Burlington's Mot. Partial Summ. J. Ex. I ("Bernard Dep.") [Doc. No. 103-12] 119:11-12.

[37] Bernard Dep. [Doc. No. 103-12] 118:22-24, 119:1-4.

[38] Burlington's Mem. Opp. KBS' Mot. Summ. J. Ex. D ("Curnow Dep.") [Doc. No. 104-4] 169:8-9.

[39] Bernard Dep. [Doc. No. 103-12] 122:4-10.

[40] According to the deposition testimony of Curnow, Burlington's security system is an "older unsupported system" that has an "average retention [period] of 30 days." Curnow Dep. [Doc. No. 104-4] 195:19-24-196:1-5.

the hazardous condition was created, and whether and to what extent Burlington sought to rectify it.[41]

In short, there is simply no basis to conclude that Burlington's failure to preserve the pertinent video evidence was the result of "inadvertence, routine practice, or accident."[42] Rather, the circumstances of this case and the undisputed evidence of record support a finding that Burlington "intended to actually withhold" the relevant evidence for the specific purpose of denying it to the other parties to this litigation.[43] Therefore, Burlington is liable for spoliating evidence.

### b. The Appropriate Sanction for Burlington's Spoliation

"Where evidence is destroyed, sanctions may be appropriate, including the outright dismissal of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.'"[44] The Third Circuit has held that courts considering sanctions against a spoliating party must balance three factors: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) the availability of a sanction less than entering judgment against the spoliating party that will

---

[41] *See Marshall v. Brown's IA, LLC*, 213 A.3d 263 (Pa. Super. Ct. 2019) (en banc) ("Video surveillance allows one to rewind and view the events prior to a slip and fall. It might show the fall, or reveal how, when, and by whom the dangerous condition was created."); *see also Pace v. Wal-Mart Stores E., LP*, 799 F. App'x 127, 130 (3d Cir. 2020) ("[W]hether a litigant is entitled to an adverse inference based on spoliation is a procedural question governed by federal law in diversity cases, so Pennsylvania state court decisions on the issue are merely persuasive.").

[42] *See Bozic v. City of Washington, Pa.*, 912 F. Supp. 2d 257, 269 (W.D. Pa. 2012) (citing *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 79 (3d Cir. 2012)).

[43] *See Bull*, 665 F.3d at 79.

[44] *Swindell Dressler Int'l Co. v. Travelers Cas. & Sur. Co.*, 827 F. Supp. 2d 498, 506 (W.D. Pa. 2011) (citations omitted).

adequately protect the opposing party's rights and deter future similar conduct.[45] However, a court should resort to the drastic sanction of entering judgment against a spoliating party only when "no alternative remedy by way of a lesser, but equally efficient sanction is available."[46] The Court must "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim."[47]

The degree of fault in this case is apparent, as Burlington had control over and possession of the video, but unilaterally failed to preserve it. While Burlington claims that it was merely following orders, this argument is unavailing for the reasons discussed above. Subcontractor Defendants and Plaintiffs are significantly prejudiced by the spoliation, as they have been deprived of probative evidence relating to the events that occurred before Catherine Heagy fell and sustained injuries from the hazardous condition. Further, the Court is not persuaded by Burlington's assertion that the footage "equally might have proven" its version of events, given that Burlington's own conduct is the reason why the evidence no longer exists.[48]

As for the appropriate sanction, Subcontractor Defendants argue that Burlington's spoliation necessitates dismissal of the claims against them. Notwithstanding the foregoing, the circumstances of this case do not justify the outright dismissal of claims, which is a "drastic and disfavored remedy" to be granted only in "limited circumstances."[49] While the Court may

---

[45] *See Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir.1994) (same).

[46] *Paramount*, 234 F.R.D. at 110-11 (internal quotation marks omitted) (quoting *Baliotis v. McNeil*, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994)).

[47] *Schmid*, 13 F.3d at 79 (internal quotation marks and citations omitted).

[48] *See* Burlington's Mem. Opp. KBS' Mot. Summ. J. [Doc. No. 104] at 11; Burlington's Mem. Opp. Gray Defs.' Mot. Summ. J. [Doc. No. 105] at 14.

[49] *Plouffe v. Cevallos*, 777 F. App'x 594, 602 (3d Cir. 2019) (citation omitted); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citation omitted) (noting that dismissal of claims "is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits").

consider alternative sanctions, including, *inter alia*, a spoliation inference and an award of litigation expenses, it would be premature to do so at this juncture. The Court has not issued a Pre-Trial Order; no trial date has been set; and the parties have not submitted proposed jury instructions. The Court therefore will deny without prejudice all arguments regarding spoliation sanctions, and grant the parties leave to file appropriate motions for sanctions in accordance with the Court's reasoning set forth above.

IV.   **CONCLUSION**

For the reasons stated above, the Court will deny Burlington's motion for partial summary judgment and deny Subcontractor Defendants' motions for summary judgment. While Burlington is liable for failing to preserve pertinent video evidence, its conduct does not necessitate an entry of judgment in favor of Subcontractor Defendants. However, to preserve and protect the integrity of the proceedings before it, the Court will deny without prejudice all arguments concerning proposed spoliation sanctions and grant the parties leave to move for appropriate sanctions at or near the time of trial. An appropriate Order follows.